**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

HUAWEI TECHNOLOGIES USA, INC.,
5700 Tennyson Parkway, Suite 500
Plano, TX 75024,

       *Plaintiff*,

       v.                                                                  Case No.

UNITED STATES DEPARTMENT OF
COMMERCE, BUREAU OF INDUSTRY
AND SECURITY, and OFFICE OF EXPORT
ENFORCEMENT,
1401 Constitution Ave., NW
Washington, DC 20230,

       *Defendants*.

_____/

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff Huawei Technologies USA, Inc. ("HT USA") hereby brings this civil action for

declaratory and injunctive relief against Defendants the United States Department of Commerce;

the Bureau of Industry and Security; and the Office of Export Enforcement and alleges as follows:

## NATURE OF THE ACTION

1.      HT USA's parent entity, Huawei Technologies Co., Ltd. ("Huawei"), is a leading

global developer and manufacturer of information and communications technology infrastructure

and smart devices.  In 2017, Huawei shipped several pieces of telecommunications equipment

from China to an independent testing laboratory in California to undergo certification testing, with

HT USA's predecessor-in-interest acting as the consignee on the shipment.  After the successful

completion of that testing, the equipment was to be shipped back to Huawei in China, with HT

USA's predecessor-in-interest acting as the shipper.  At the time of the shipment, no licenses were

required under the Export Administration Regulations ("EAR") for Chinese-origin equipment of

this type to be shipped from the United States to China. Accordingly, there was no application made for a license.

2.      On or about September 27, 2017, Defendants nevertheless seized the equipment *en route* and caused it to be offloaded and detained in Anchorage, Alaska. The Defendants purportedly seized the equipment to investigate whether the shipment required a license and, thus, could not be exported to China without one.

3.      After a month's delay, Defendants notified HT USA's predecessor-in-interest of the detention and requested technical information that Defendants' representative said was needed to determine whether the unlicensed shipment of the equipment back to China would, if shipped, have violated the EAR. The requested information was promptly provided and, on November 13, 2017, a request was made that Defendants conduct a license determination for the equipment and, if no license was required, release the equipment. In other words, Defendants were requested to perform two discrete, nondiscretionary agency actions entrusted to them by statute: (i) determine whether the seized property required a license to be shipped to China and (ii) if not, release the property from detention. According to Defendant BIS, the normal processing time for such requests is fewer than 45 days.

4.      More than 20 months have passed since this request, and the Defendants have still not performed either of these duties. In particular, Defendants have either (i) failed to make a determination whether a license was or is required for the shipment and further failed to provide HT USA any indication as to when (or whether) Defendants intend to make that determination or (ii) determined that the equipment does not require a license and, nevertheless, wrongfully continued to detain the equipment. As a direct and proximate result, the equipment, to the best of HT USA's knowledge, remains in a bureaucratic limbo in an Alaskan warehouse.

5.     In short, Defendants have unlawfully withheld and unreasonably delayed agency actions they were required to perform. Regardless of whether Defendants' initial seizure of the equipment was wrongful—HT USA does not challenge the seizure itself—Defendants' post-seizure failures to act are unlawful. This lawsuit seeks redress of Defendant's violations of the Administrative Procedure Act ("APA"), the U.S. Constitution, and the common law. HT USA does not seek damages; but instead respectfully requests an order directing Defendants to decide forthwith whether the 2017 shipment of Chinese-origin equipment back to China would violate the EAR or, in the alternative, an order directing Defendants to release the equipment to HT USA.

## PARTIES

6.     HT USA is a corporation organized and existing under the laws of the State of Texas with its headquarters in Plano, Texas. HT USA provides information and communications technology solutions and services throughout the United States. HT USA is an indirect, wholly-owned subsidiary of Huawei.

7.     Huawei Enterprise USA, Inc. ("Enterprise USA") was a corporation organized and existing under the laws of the State of California with its headquarters in Cupertino, California. Enterprise USA was an indirect, wholly-owned subsidiary of Huawei. On or about December 12, 2017, Enterprise USA merged with and into HT USA, with HT USA being the surviving corporation. As a result of the merger, all of Enterprise USA's interests passed by operation of law to HT USA.

8.     Defendant United States Department of Commerce is an agency of the government of the United States. *See* 15 U.S.C. § 1501 *et seq*.

9.      Defendant Bureau of Industry and Security ("BIS") is a bureau (*i.e.*, an agency) within the Commerce Department.  *See* 5 U.S.C. § 551(1). Among its other activities, BIS administers and enforces the EAR, 15 C.F.R. Parts 730-744.

10.      Defendant Office of Export Enforcement ("OEE") is an office (*i.e.*, an agency) within BIS.  Among its other activities, the OEE investigates possible violations of the EAR.

11.      Each of the Defendants is an agency whose actions during the relevant time period were subject to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*.

## JURISDICTION AND VENUE

12.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1356, 1361, and 1367 and 5 U.S.C. § 702.

13.      This Court has federal question jurisdiction under 28 U.S.C. § 1331, because HT USA's civil action against Defendants arises under the Constitution and laws of the United States.

14.      This Court has jurisdiction under 28 U.S.C. § 1356, because this matter involves a "seizure under any law of the United States on land or upon waters not within admiralty and maritime jurisdiction, except matters within the jurisdiction of the Court of International Trade under section 1582" of Title 28.

15.      This Court has jurisdiction under 28 U.S.C. § 1361, which provides jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

16.      HT USA is entitled to have this Court review Defendants' actions under the APA, which provides that a "person suffering legal wrong because of agency action . . . is entitled to judicial review thereof."  5 U.S.C. § 702.  The Export Control Reform Act of 2018 ("ECRA") purported to exempt Defendants' exercise of their functions with respect to the EAR from most

provisions of the APA.  50 U.S.C. § 4821(a).  However, the ECRA's transitional provisions specifically state that the ECRA "shall not affect any administrative or judicial proceedings commenced, or any applications for licenses made, under [the pre-ECRA version of the] Export Administration Act of 1979 . . . or the Export Administration Regulations."  50 U.S.C. § 4826(b). This action concerns an agency process (an export licensing determination) that is an "administrative proceeding" commenced prior to the enactment of the ECRA.

17.     This Court has supplemental jurisdiction over HT USA's replevin claim pursuant to 28 U.S.C. § 1367(a).

18.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(e)(1) because Defendants reside in this District.

19.     This Court has authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

**Huawei Temporarily Imports Equipment into United States for Certification**

20.     In or about July 2017, Huawei shipped several pieces of telecommunications equipment from China to an independent laboratory in California for testing and certification under the Carrier Ethernet 2.0 industry standard.  Enterprise USA was the consignee listed on the air waybill prepared in connection with the shipment.  This shipment included the following:  two types of packet transport platforms (Huawei models PTN990 and PTN7900), a computer server (Huawei model RH2288H V3), and an Ethernet switch (Huawei Quidway model S5352), as well as ancillary items (*e.g.*, cabinet, fan assembly, network and power cables, *etc.*) (collectively, the "Equipment").

21.     While it was in the United States, no enhancements were made to the characteristics or capabilities of the Equipment.

22.     While the Equipment remained the property of Huawei when it was in the United States, Enterprise USA acted as Huawei's bailee with respect to the Equipment.  In addition, Huawei sold all right, title, and interest in the Equipment to HT USA in June 2019.  Accordingly, HT USA has a property interest in the Equipment as successor-in-interest to Enterprise USA and as the present owner of the Equipment.  HT USA, thus, has standing to bring this lawsuit challenging the continued unlawful detention of the Equipment by Defendants.

### Enterprise USA Seeks to Return the Equipment to China

23.     After the Equipment passed the certification tests in August 2017, Huawei prepared to return the Equipment to China.  An export compliance analysis was performed to ascertain whether any Commerce Department export licenses might be required for the return of the Equipment to China.  This analysis concluded that no export license was required, and the Equipment's Export Control Classification Number ("ECCN") and licensing status under the EAR were provided to the logistics provider (the "Freight Forwarder").

24.     No export licenses were, in fact, required at that time to return the Equipment to Huawei in China for two separate reasons.[1]  First, the Equipment fell into regulatory categories (ECCN 5A991 and EAR99) that were not controlled for shipment to China under the EAR.  Second, regardless of what regulatory category applied under the EAR, the Equipment was eligible for export to China under License Exemption TMP for foreign-origin items being returned to the same country from which they had been imported.

---

[1] Effective May 16, 2019, Defendant Department of Commerce amended the EAR to add Huawei to the Entity List.  As a result, starting on that date, a license would have been required to ship equipment subject to the EAR to Huawei.  No such listing was in effect at the time of the shipment or for the following 20 months and, further, HT USA, the equipment's owner, is not seeking to ship the equipment to Huawei.

25.     In or about September 2017, Huawei concluded arrangements with the Freight

Forwarder for the Equipment to be shipped by air from San Francisco, California to Shenzhen,

China.  Enterprise USA was the shipper listed on the air waybill prepared in connection with the

shipment.  On or about September 27, 2017, the Equipment left San Francisco on a flight to the

Los Angeles, California, airport (LAX) where it was loaded on a flight to Hong Kong, with a final

destination of Shenzhen.

### Defendants Seize the Equipment

26.     When the flight carrying the Equipment stopped in Anchorage, Alaska, Defendants

seized the Equipment and caused it to be offloaded and detained.  On information and belief, the

Equipment has been stored in Anchorage, Alaska, under Defendants' control since approximately

September 27, 2017, through the present.

27.     Defendants failed to promptly notify Enterprise USA or its Freight Forwarder of

the seizure of the Equipment.

28.     Instead, on November 1, 2017, more than one month after the seizure, a Special

Agent of Defendant OEE's Dallas Field Office (the "Special Agent") contacted Enterprise USA's

counsel by email, stating:

> I had to detain a shipment from Huawei Enterprise USA Inc. going out of
> LAX.  Attached is the detention letter.  If you have any questions please let
> me know.  I will probably be issuing an admin subpoena for the tech specs
> regarding the equipment.  I'll let you know tomorrow.  Thank you.

29.     The one-page detention letter, dated November 1, 2017, (the "Detention Letter")

provided Enterprise USA with formal notice of the detention:

> This letter is to officially inform you that the shipment being handled by
> [the Freight Forwarder] on behalf of Huawei Enterprise USA, Inc.,
> Cupertino CA.; ITN X20170925589611, is being detained by the U.S.
> Department of Commerce, Office of Export Enforcement, Dallas Field
> Office, Irving Texas.

A true and correct copy of the Detention Letter is attached hereto as Exhibit 1.

30.     The Detention Letter purported to explain the seizure and detention of the

Equipment in a single, terse sentence:

> BIS has reason to believe that the shipment of these commodities to its final
> destination will result in a violation of the Export Administration
> Regulations (15 C.F.R. Parts 730-774).

The Detention Letter did not explain — and Defendants have never explained — why Defendant

BIS believes that shipment of the Equipment back to China would violate the EAR.

### Enterprise USA Seeks a Licensing Determination and Release of the Equipment

31.     On November 3, 2017, Enterprise USA's outside counsel spoke by telephone with

the Special Agent about the detained Equipment.  The Special Agent requested that Enterprise

USA provide technical documentation regarding the Equipment so Defendants could determine

whether the Equipment required a license to be returned to China.  Counsel agreed to provide the

requested technical documentation voluntarily.

32.     On November 13, 2017, Enterprise USA's counsel provided the requested technical

documentation to the Special Agent by email and requested that Defendants release the seized

Equipment from detention.  Counsel's cover email identified the specific items in the shipment by

model number and stated:

> We have attached technical specifications for each of these items, all of
> which Huawei understands to be classified under ECCN 5A991.  The
> shipment also contains a variety of ancillary items (e.g., cabinet, fan
> assembly, network and power cables, screwdriver, etc.) that are classified
> EAR99.
>
> . . . Prior to returning the equipment to China, Huawei—as a part of its
> standard practice for all such shipments—performed a thorough export
> compliance analysis to ascertain whether any Commerce Department export
> licenses might be required.  Having determined that the equipment was
> classified under ECCN 5A991 and therefore controlled for "AT Column 1"

8

reasons only, Huawei concluded that the goods were eligible for shipment without a license ("NLR"). As a part of scheduling the return of the equipment to China, Huawei communicated the equipment's ECCN classification and licensing status to [the Freight Forwarder], its logistics provider.

Thank you again for your assistance. After BIS has reviewed the attached technical specifications, we trust that you will be in a position to authorize the immediate release of the detained shipment. Please do not hesitate to contact us if you have any further questions or require any additional information.

**Defendants Initiate a Proceeding, but Never Decide Whether to Release the Equipment**

33.     On November 13, 2017, the Special Agent informed outside counsel for Enterprise USA that a request for an export license determination for the Equipment had been "put in" that day. An export license determination is an "agency proceeding" within the meaning of the APA and an "administrative proceeding" within the meaning of the ECRA.

34.     On November 21, November 28, and December 1, 2017, Enterprise USA's counsel contacted the Special Agent to inquire about the status of Defendants' license determination. The Special Agent told counsel no decision had yet been made.

35.     On December 8, 2017, the Special Agent contacted Enterprise USA's counsel by email, stating:

> My apologies for the radio silence. I have been traveling extensively and returned mid-week and am trying to get caught up. I have a call into the licensing officer regarding this shipment. I cannot release it at this time until I get the last license determination. As soon as I get that I will clear it with my management and then I can release. If you need any other correspondence from me for your clients or management please let me know. Thank you.

36.     Later that same day, the Special Agent sent Enterprise USA's counsel a second email asking for the name of the independent laboratory that had conducted the certification testing

on the Equipment.  Enterprise USA's counsel provided the requested information on December

12, 2017.

37.    Also on or about December 12, Enterprise USA merged into HT USA, with HT

USA acquiring all of Enterprise USA's rights and interests in the Equipment.

38.    HT USA's counsel contacted the Special Agent by email again on December 19,

2017, and January 3, 2018, to inquire about the status of the license determination for the

Equipment.  The Special Agent did not respond to those emails.

39.    HT USA's counsel contacted the Special Agent by email again on January 10, 2018,

stating:

> We have provided all requested information regarding the Huawei
> equipment in the shipment detained by CBP in late September.  We strongly
> believe there should be no further concerns about shipping telecom
> equipment classified under ECCN 5A991 to China, since the EAR do not
> require an export license for such shipments.  You indicated in early
> December that you were waiting for one last license determination from BIS
> HQ.  When may we expect confirmation that this equipment can be released
> for shipment back to Huawei?

The Special Agent did not respond to this email.

40.    After hearing nothing from the Special Agent for over five months, HT USA's

counsel telephoned the Special Agent on May 22, 2018, to inquire about the status of the

Equipment.  The Special Agent stated that he was no longer responsible for any decisions regarding

the Equipment, but that he would check on the status of any decision.

41.    This was the last communication from the Special Agent or any other representative

of Defendants about the licensing determination or the detention of the Equipment.  Indeed, HT

USA has received no information at all about the Equipment from May 22, 2018, through the

present.

42.     On information and belief, Defendants have not to this day made a determination whether a license was required for the 2017 shipment.  Nor have they given HT USA or its counsel any indication as to when (or whether) they intend to make that determination.

43.     Defendants have also not made a decision on whether to release the Equipment. Instead, on information and belief, the Equipment remains under Defendants' control.

44.     As of date of the filing of this Complaint, Defendants have improperly detained and exercised rights over the Equipment for 632 days, including a total of 585 days since the Special Agent advised that a request for a license determination had been "put in."

45.     The Defendants' delay in making a license determination is extraordinary and unjustified.  According to a public presentation made by BIS on October 2, 2017, at the 2017 Conference on Export Controls and Policy, it normally takes BIS just 24-35 days to process a request for a license determination.



**BIS UPDATE 2017** CONFERENCE ON EXPORT CONTROLS AND POLICY

## PROCESSING TIME FRAME (contd.)

→ days 25-35: the LO completes the LD processing (ECCN determination, applicable list-based license exception(s), final recommendation, signing off).

**Notes:**

(1) Expedited or emergency LDs follow same process but time frame is shortened to the extent possible.

(2) All processed LDs are official certified LDs (no separate written certification document required).

U.S. DEPARTMENT OF COMMERCE • BUREAU OF INDUSTRY AND SECURITY

**HT USA Has Exhausted All Administrative Remedies**

46.     All conditions precedent to the claims asserted herein have been satisfied.

47.     In particular, HT USA has exhausted any and all administrative remedies required to be exhausted prior to suit.

48.     HT USA has never been compensated for the Equipment or for the loss of use thereof.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**
**(APA § 706(1) — AGENCY ACTION UNLAWFULLY**
**WITHHELD OR UNREASONABLY DELAYED)**

49.     HT USA repeats and realleges the allegations of paragraphs 1-48 as if set forth fully herein.

50.     The APA provides that the reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

51.     Following Defendants' seizure of the Equipment, they unlawfully withheld and/or unreasonably delayed two agency actions in violation of APA § 706(1).

52.     First, Defendants failed to determine whether the 2017 shipment of the Equipment back to China required a license and, thus, would have violated the EAR. Making this determination is a discrete agency action that the Defendants were required to do. Defendants received all of the information requested and necessary for such a determination on or before November 13, 2017. According to Defendant BIS, the normal processing time for such determinations is fewer than 45 days. Nevertheless, Defendants have neither made a licensing determination for the Equipment nor even indicated to HT USA when (or whether) they intend to make that determination. They have instead simply left the Equipment in limbo.

53.     Second, Defendants failed to determine whether to release the Equipment from detention. Making this determination is a discrete agency action that the Defendants are also required to take. In fact, even if Defendants' seizure of the equipment was justified at the time of the seizure, Defendants were required to release the Equipment from detention if no license was required. Defendants have not made an affirmative decision on whether continued detention of the Equipment was appropriate. Instead, they have maintained control of HT USA's property pending a determination that Defendants have unreasonably delayed and that now seems likely never to be made.

## SECOND CLAIM FOR RELIEF
### (APA § 706(2)(A) — ARBITRARY AND CAPRICIOUS AGENCY ACTION)

54.     HT USA repeats and realleges the allegations of paragraphs 1-53 as if set forth fully herein.

55.     The APA provides that the reviewing court shall "hold unlawful and set aside agency action" found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

56.     The APA defines reviewable "agency action" to include an agency's "failure to act."  5 U.S.C. § 551(13).

57.     The Defendants' prolonged and ongoing failure to determine whether the 2017 shipment of the Equipment back to China required a license and, thus, would have violated the EAR constitutes an arbitrary and capricious failure to act in violation of APA § 706(2)(A).

58.     The Defendants' prolonged and ongoing failure to determine whether to release the Equipment from detention also constitutes an arbitrary and capricious failure to act in violation of APA § 706(2)(A).

## THIRD CLAIM FOR RELIEF
### (APA § 706(2)(C) — AGENCY ACTION IN EXCESS OF AUTHORITY)

59.     HT USA repeats and realleges the allegations of paragraphs 1-58 as if set forth fully herein.

60.     The APA provides that the reviewing court shall "hold unlawful and set aside agency action" found to be "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(C).

61.     22 U.S.C. § 401(a) and 15 C.F.R. § 758.7(b)(6) authorize the Defendants to detain items when there is probable cause to believe the items may be exported in violation of the EAR.

62.     However, 22 U.S.C. § 401(a) and 15 C.F.R. § 758.7(b)(6) do not authorize the Defendants to detain items indefinitely without ever deciding whether their export would, in fact, violate the EAR.

63.     Regardless of whether the initial seizure of the Equipment was lawful, the Defendants' prolonged and ongoing failures since November 2017: (i) to determine whether the 2017 shipment of the Equipment back to China required a license; (ii) to determine whether to release the Equipment from detention; and (iii) actually to release the Equipment from detention exceeded their statutory and regulatory authority under 22 U.S.C. § 401(a) and 15 C.F.R. § 758.7(b)(6).  Defendants actions thus violated APA § 706(2)(C).

**FOURTH CLAIM FOR RELIEF**
**(APA § 706(2)(B) AND FOURTH AMENDMENT— UNREASONABLE SEIZURE)**

64.     HT USA repeats and realleges the allegations of paragraphs 1-63 as if set forth fully herein.

65.     The APA provides that the reviewing court shall "hold unlawful and set aside agency action" found to be "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

66.     The Fourth Amendment to the U.S. Constitution provides in part:  "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const. amend. IV.

67.     The Defendants initially detained the Equipment in September 2017 for the stated purpose of investigating whether shipping the Equipment back to China would have violated the EAR.  The Defendants have continued the detention for more than 20 months without making a licensing determination or deciding whether to release the Equipment from detention.

68.     Even if the initial detention of the Equipment was lawful, Defendants' prolonged and ongoing detention of the Equipment constitutes an unreasonable seizure in violation of the Fourth Amendment and APA § 706(2)(B).

**FIFTH CLAIM FOR RELIEF**
**(APA § 706(2)(B) AND FIFTH AMENDMENT — DEPRIVATION**
**OF PROPERTY WITHOUT DUE PROCESS)**

69.     HT USA repeats and realleges the allegations of paragraphs 1-68 as if set forth fully herein.

70.     The APA provides that the reviewing court shall "hold unlawful and set aside agency action" found to be "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

71.     The Due Process Clause of the Fifth Amendment to the U.S. Constitution provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

72.     As set forth above, HT USA has property interests in the Equipment, including the rights to possess the Equipment.

73.     HT USA also has rights under its contract with the Freight Forwarder, with which it contracted to ship the Equipment.

74.     Defendants' prolonged and ongoing refusals since November 2017 (i) to determine whether the 2017 shipment of the Equipment back to China required a license; (ii) to determine whether to release the Equipment from detention; and (iii) actually to release the Equipment from detention deprived HT USA of those property and contract rights without due process of law in violation of the Fifth Amendment and APA § 706(2)(B).

**SIXTH CLAIM FOR RELIEF**
**(28 U.S.C. § 1361 — RELIEF IN THE NATURE OF MANDAMUS)**

75.     HT USA repeats and realleges the allegations of paragraphs 1-74 as if set forth fully herein.

76.     This Court has authority under the Mandamus and Venue Act of 1962 to order relief "in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

77.     After detaining the Equipment in 2017, Defendants owed HT USA a clear, nondiscretionary duty to determine whether the 2017 shipment of the Equipment back to China required a license and, thus, would have violated the EAR. Defendants have failed to perform that duty.

78.     After detaining the Equipment in 2017, Defendants also owed HT USA a clear, nondiscretionary duty to determine whether to release the Equipment from detention if the 2017 shipment of the Equipment back to China did not require a license. Defendants have failed to perform that duty.

79.     The Defendants are, thus, violating clear duties to act.

80.     HT USA has a clear and indisputable right to relief. No adequate alternative exists to the issuance of relief in the nature of mandamus.

**SEVENTH CLAIM FOR RELIEF**
**(COMMON LAW — REPLEVIN)**

81.     HT USA repeats and realleges the allegations of paragraphs 1-79 as if set forth fully herein.

82.     Replevin is a common law cause of action for the repossession of personal property wrongfully taken or detained by the defendant.

83.     HT USA (as successor to Enterprise USA) has a right to immediate possession of it that is superior to all relevant parties.

84.     By seizing and detaining the Equipment, the Defendants took constructive possession of HT USA's property.

85.     Regardless of whether Defendants' seizure of the Equipment was wrongful in September 2017, the Defendants' prolonged and ongoing detention of HT USA's property is unlawful. Defendants' continued detention of the Equipment wrongfully deprives HT USA of its right to possess the Equipment.

86.     HT USA has demanded that the Defendants release the Equipment from detention, but the Defendants have failed or refused to do so.

87.     The remedy of replevin is available to this Court pursuant to Federal Rule of Civil Procedure 64(b).

### EIGHTH CLAIM FOR RLIEF
### (28 U.S.C. § 2201 — DECLARATORY JUDGMENT)

88.     HT USA repeats and realleges the allegations of paragraphs 1-87 as if set forth fully herein.

89.     The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

90.     There is an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment.

91.     It is likely that the Defendants will continue to detain the Equipment in violation of HT USA's rights.

92.     This Court should enter a judgment declaring that the Defendants must decide forthwith and without delay whether the shipment of the Equipment back to China in 2017 would have violated the EAR.

93.    This Court should also enter a judgment declaring that the Defendants must decide forthwith and without delay whether to release the Equipment from detention.

## REQUEST FOR RELIEF

WHEREFORE, HT USA respectfully requests that the Court:

(a)    Hold and declare that Defendants have unlawfully withheld or unreasonably delayed agency action to determine whether the 2017 shipment of the Equipment back to China required a license and, thus, would have violated the EAR;

(b)    Hold and declare that Defendants have unlawfully withheld or unreasonably delayed agency action to determine whether to release the Equipment from detention;

(c)    Hold and declare that Defendants' ongoing detention of the Equipment is unlawful;

(d)    Order and compel Defendants to decide forthwith and without further delay whether the 2017 shipment of the Equipment back to China required a license and, thus, would have violated the EAR;

(e)    Order and compel Defendants to release the Equipment from detention for shipment to HT USA in Texas if the 2017 shipment of the Equipment back to China would not have violated the EAR;

(f)    Award Plaintiff its reasonable attorneys' fees pursuant to 28 U.S.C. § 2412; and

(g)    Award Plaintiff such other and further relief as the Court may deem just and proper. *See*, *e.g.*, 28 U.S.C. § 2202.

Dated:  June 21, 2019                              Respectfully submitted,


                                                   Frank R. Volpe (D.C. Bar No. 458791)
                                                   Griffith L. Green (D.C. Bar No. 456442)
                                                   Matthew J. Letten (D.C. Bar No. 1047224)
                                                   Ava X. Guo (D.C. Bar No. 1027694)*
                                                   SIDLEY AUSTIN LLP
                                                   1501 K Street, NW
                                                   Washington, DC 20005
                                                   (202) 736-8565
                                                   fvolpe@sidley.com
                                                   ggreen@sidley.com
                                                   mletten@sidley.com
                                                   aguo@sidley.com

                                                   *Counsel for Plaintiff*
                                                   *Huawei Technologies USA, Inc.*


                                                   **pro hac vice* motion forthcoming